v. Thomas E. Ruzecki, defendant appellant, arguing for the appellant, Amy Seaman, arguing for the appellee, Adam Trejo. Good morning, counsel. Good morning, Your Honor. I understand that, and I got part of the instructions. I hope that you can hear me, and we do appreciate your efforts here via video to do this oral argument. So, Miss Seaman, if you are ready, you may proceed. Thank you, Your Honor. We appreciate the opportunity. May it please the court, good morning. My name is Amy Seaman. I am an attorney with Sam Amaranti's office on behalf of the appellant, Mr. Thomas Ruzecki. In the matter of People of the State of Illinois v. Thomas Ruzecki, we respectfully request that this honorable court overturn the finding of guilty to the single count of domestic battery in this matter for the following reasons. First, Your Honor, we ask that this court find that even under the reasonableness standard of review, that the evidence in this case was insufficient to prove Mr. Ruzecki guilty beyond a reasonable doubt. The evidence that the state presented was by way of two witnesses, a single witness who was there as the alleged incident occurred on September 14th. This witness testified that she had a fuzzy memory of what occurred, that she did not remember what occurred, that it was a blur, and that was because she was drinking. Your Honor, the court allowed Ms. Dorsey to testify with regard to her memory as well as the second point that we would like to raise is that the court committed reversible error in allowing an order of protection to go back to the jury, not only admitted in the evidence, but also published to the jury. Now, while the honorable trial court level found that because the issue was not objected to at trial, that the appellant has waived that issue, we ask that this court review it under the plain error doctrine. This order of protection was admitted, and the state contends there's two possible reasons that this order of protection was properly admitted. The first is that the state told the judge that there was an agreement between the state and the defense with regard to redacted portions on the order of protection. Now, while that may have been true prior to the testimony of the witness in this case, the witness did not testify sufficiently to allow a legal admission of this order of protection. Specifically, this order of protection was not admissible as a prior inconsistent statement. Law is clear that in order for something to be admitted as a prior inconsistent statement, several factors have to be met. The first of which is that the statement is inconsistent with testimony at the hearing or trial, and that's 725 ILCS 5 slash 115 dash 10.1. In this case, Your Honor, the witness did not testify, which was not asked questions about whether or not water was thrown on her. She was not asked questions about whether or not she was punched. She was not asked questions about whether or not Mr. Brzezinski allegedly made statements to her regarding smashing her head in. She was simply asked what occurred. She testified partially as to what she remembered. She stated on page 13, lines 14 through 15, I went after him. Further on down the page, line 20, it was physical in both ways. And then later on, on page 19, I remember myself going after him. And Your Honor, this is not inconsistent with what she stated in the order of protection. The order of protection is simply greater. Excuse, excuse me, one minute. I don't know who's making the noise. And if it's you, counsel, I don't have any problem with that. But if everyone else doesn't have their phones or their you use their device muted, can we please do it because it's distracting. Thank you, Your Honor. Your Honor, with regard to the the order of protection going in the fact that the state did not ask these questions of the witness, it's not as if the witness stated, well, this didn't happen. And then the order of protection was admitted. Well, this actually did happen. And furthermore, we asked the court to consider three factors. The fact that the witness testified that she herself did not want to obtain the order of protection, but that she was directed to do so by the arresting officer. She testified she herself did not write the order of protection that it was written for her. She did not wish to sign the complaints in this matter. And she did not wish to move forward with the charges in this matter. And Your Honor, it's reversible error to have that order of protection. And that's evidenced by the fact that the jury found Mr. Rizeki not guilty of domestic battery with regard to bodily harm and guilty with regard to domestic battery of an insulting and provoking nature. It's clear that because the evidence in this case was so slight that the jury relied heavily on this improperly admitted order of protection. With regard to our first point, our initial point regarding the beyond a reasonable doubt standard. Even in this case, when looking at light, most favorable to the state under a reasonableness standard, the courts have found that in order to sustain a finding of guilty with regard to insulting and provoking. And I'm specifically pointing to the case, Your Honor, of people in the state of Illinois versus Rensher. That's W-R-E-N-C-H-E-R. That's a fourth district case, Your Honor. In that case, the court found that in order for insulting and provoking domestic battery to be sustained, a conviction for such, the court must look at how the complaining witness or the victim reacts to an incident that occurred. In this case, Your Honor, it's clear. Ms. Dorsey testified that after this alleged incident occurred, she went to bed. She heard a knock on the door. She ignored that knock and that she felt that she was part of that situation too. She didn't, again, did not wish to sign complaints and did not wish to move forward. That's clear, Your Honor, that Ms. Dorsey in this case did not feel insulted nor provoked by what occurred between her and Mr. Rezecki. She testified again that she went after him, if anything, and she started it. And so, Your Honor, based upon the evidence that came out, without any further corroboration, we only have testimony of one witness that was there. And by the state's own admission in their brief, Your Honor, the state concedes that Ms. Dorsey's testimony was inconsistent, that her testimony was incredible at parts. The state concedes that. So we're left with the question of how can an individual be facing a loss of his liberty? How can he be now convicted of this domestic battery where there's no corroboration and by the state's own admission that their own witness was not credible, Your Honor? And so for those reasons, we ask that you reverse the finding of guilty in this case. Additionally, Your Honor, the court committed plain error by admitting evidence of photographs that were improperly testified to. And the appellant takes issue, Your Honor, with a lot of the way that the testimony came out at trial, specifically with regard to point two, our order of protection. It was clear throughout that portion of the transcript that the state was essentially testifying for Ms. Dorsey and each and every question was objected to by the defense with regards to the testimony being leading and all of those objections, Your Honor, were overruled aside from the initial objection. But the state was asking Ms. Dorsey, and didn't this occur? Didn't this occur? Didn't this occur? And it's all from the what we determined to be cumulative or hearsay inadmissible order of protection. And so, Your Honor, although if this court should find that because the order of protection was admitted without objection at trial, we do ask the court to consider with regard to the plain error doctrine and we ask the court to consider fundamental fairness in that regard. And the fact that this is not a surprise, this argument that we're making, the argument was made to the judge with regard to the publication of the order of protection. We can see that it should have been made with regard to the admission of the order of protection, but it was made and laid out to the court with regard to the publication. It was then raised again in the post trial motion, and it's been the forefront and the crux of our argument, Your Honor, in the appellant's initial brief. Without this order of protection, we believe that Mr. Rezeki, the jury, no reasonable jury would have been able to find him guilty. We believe that with this admission of the order of protection, it was unreasonable for the trier of fact to find Mr. Rezeki guilty, and we ask that this honorable court find as such. Finally, Your Honor, the state raises in their response to our brief that many of these improper evidentiary admissions were under the invited error doctrine. We asked the court to look at the case cited by the state, people of the state of Illinois versus Alvarado, A-L-V-A-R-A-D-O. In that case, Your Honor, the reviewing court held that although the state contended that the invited error doctrine prohibited the defendant from raising the issue on appeal, the fact that the trial court in that case ruled that the defendant could not play a portion of the video but must play the whole video, the defendant in that case, because he really had no choice, the court held that he did not procure, invite, acquiesce to the admission of evidence. That is such the case here, Your Honor, that because the court had ruled that the order of protection was admitted, we did not invite this error with regard to the trial in this case, Your Honor. And we're not asking, finally, we're not asking the court to retry the case or substitute the judgment, but we do believe that because the jury found that the defendant did not commit bodily harm, the state's argument that any force by Mr. Rzecki to Heidi Dorsey was excessive retaliatory force, it's a logical stretch. The state also classifies the injuries to Mr. Rzecki. They concede that Mr. Rzecki has injuries with regard to scratches that occurred, red mark that occurred, but the state classifies these injuries as minimal or minor. But that's irrelevant for our argument, Your Honor, as there was a finding of not guilty as to bodily harm with regard to causing those alleged bruises on Ms. Dorsey's body, Your Honor. And because of that, all we're left with is the insulting and provoking verdict. And in this case, Your Honor, we asked the court to look at the behavior of the complaining witness of Ms. Dorsey after this occurred. And certainly, because she didn't call the police, there was testimony that she texted her daughter, but again, when the door, there was a knock at the door, that could have been her daughter, she didn't even want to answer it. In fact, she testified she went back to bed and that she wanted, that she did not want to move forward with it because she felt part of the situation. And for those reasons, Your Honor, we ask that you reverse the finding of the, of the, of the jury in this case and find Mr. Rzecki not guilty. And Your Honor, it, with regard to the finding of not guilty, we ask that the court, and I know that the court has, has read the transcript, has read and reviewed the record. The complaining witness testified that she had, on page 30, she testified that she has, she remembers the incident that occurred on September 14th better today. And that's very important for purposes of our argument, Your Honor, because the state contends that the order of protection was properly admitted as a prior inconsistent statement. However, the first prong that needs to be met is that that the testimony at trial must be inconsistent with the prior statement. And we've touched on this already, but Your Honor, the fact that she, that Ms. Dorsey testified that her memory was better on the date of trial, and that parts of it were coming back to her on the day of trial. That is the testimony that should have been allowed before the jury. There was no allegation that this witness was combative, evasive, or outright lying. And case law has held that without that indication, without some sort of testimony, something we can point to in the record, where Ms. Dorsey, and there's even certain points, Your Honor, where the state is asking Ms. Dorsey, well, did you tell the people that drafted the order of protection, which was not Ms. Dorsey, what she wanted to include in that order of protection? And she states how long I wanted it. And then the state fumbles for a second about what kind of follow up question. And it's very clear in regard to that portion of the testimony that Ms. Dorsey is attempting to answer the question that the state is asking her. And she answers it to the best of her ability. And without some indication that she's being evasive or that she's not telling the truth, the state can't just introduce this order of protection because it's unfair, Your Honor. And it also talks about things that were inconsistent with the evidence that came out at trial, specifically the water throwing that occurred. The officer that arrived on scene testified that he did not observe Ms. Dorsey to be wet. He didn't observe the floor to be wet. She never indicated to him that water was thrown. So we have testimony at trial that is consistent with her prior testimony to the police officers. But then we have this order of protection, which the state contends is inconsistent. And, Your Honor, the evidence at trial, that is what should be presented before the jury. And that is what the jury should consider by allowing this ancillary piece of evidence to come in without meeting. And, Your Honor, we asked the court to look to the history of the prior inconsistent statement statute that courts previously. That inconsistent prior statements that were that are not taken under oath are typically frowned upon to be admitted into evidence, Your Honor. And that's why it's very important that all of the foundation is met with regard to allowing a prior inconsistent statement. And because it can be extraordinarily prejudicial. And in this case, it was the appellant's position is that that was the reason that Mr. And without the admission of that inconsistent statement, which our position is was not an inconsistent statement at all. He would not have been found guilty. And we asked the court to reverse the finding of guilty for those reasons. Have you finished, Ms. Seaman? Thank you, Your Honor. Yes, we would ask that any any further time be reserved. All right. Justice Shostak, do you have any questions? Justice Shostak. There's no record of the argument taken or the court's ruling. How do we decide whether or not the trial court got that right? Your Honor, the record was supplemented after our finding, our discovery that the record was incomplete with. If if the your honor does not have that portion in in front of your honor, we believe that your honor can still consider the arguments with regard to the evidence as they were presented at trial. The fact that your honor has the actual written post-trial motion, our position would be is sufficient for the justices to consider because the the only thing that must be included in the post-trial motion is that the arguments must be included or their waive. So the fact that your honor does have the written post-trial motion in front of her, we believe is sufficient because that allows. Okay, let me get to my next portion of my question. Was your post-trial motion timely? Yes, Your Honor. We believe that the post-trial motion was timely filed. I know that in the fact that the state did not object to the timeliness of the filing at the hearing on the post-trial motion and the fact that the court did rule on the post-trial motion. We believe that any timeliness objection should be waived for all purposes. It's because it's just as if we did not have an argument in our post-trial motion, that argument would then be waived for purposes of today's hearing. The fact that the state and the court allowed argument and did not object the state to the timeliness of the post-trial motion waives that argument, your honor. Can a waiver give us jurisdiction? Yes, Your Honor. We believe that... Did I lose you? I don't hear her. I don't either. Your Honor. Can you hear me? I do now, Justice Shostak, but I think we have Ms. Seaman back. Ms. Seaman, are you there? I'm there, Your Honor. Thank you. Okay. Can you answer Justice Jorgensen's question? Yes, Your Honor. Our position is that a... May Your Honor repeat the question? Yeah. How does it give us jurisdiction? Your Honor, we believe that that jurisdiction is given to the reviewing court once the notice of appeal is timely filed. And once, as long as a post-trial motion was filed and litigated in the jurisdiction for purposes of reviewing courts, Your Honor, with regard to the issues presented, is to allow no unfair surprise. So here, because the issues were laid out in the post-trial motion, which Your Honor does have, then Your Honor can make the determination of whether or not these issues were properly presented to the state and to the trial court. Okay. Actually, that's all the questions I have. Thank you. Now, Justice Shostak, do you have some questions? I do, and I apologize. I don't know what the problem is, why I couldn't be heard. One of the issues that you raised was cumulative error. In order to have cumulative error, don't the claims separately have to amount to error? Yes, Your Honor. In order for cumulative error to be raised, each claim individually must amount to reversible error in and of itself. And we believe that we have met that standard with each and every error that we're alleging, Your Honor. And I know that courts have held cumulative error in this case law and progeny with regard to cumulative error, and it's clear. Yes, Your Honor, that each error must, in and of itself, rise to the level of reversible error in order for an appellant to claim cumulative error. And we believe that that's been met in this case, Your Honor. Certainly, and I think that this, for purposes of today's hearing, the two issues that we believe are the strongest are the reasonable doubt issue that the state failed to meet their burden, and the fact that the order of protection was improperly admitted. That, in and of itself, is plain error. And, Your Honor, but taking everything together certainly is cumulative error enough for reversal, but individually, in and of itself, we've also met that burden, we believe, Your Honor. Okay, so those are the two issues that you're going to focus on. I'll focus on those, too, and stay away from some of the other questions that I have. With respect to the order of protection, the prior inconsistent statements you don't deny can be used as substantive evidence, correct? Correct, Your Honor. Absolutely. Prior inconsistent statements can be used as substantive evidence if certain pronged statutory elements are met. So, in a domestic violence case, oftentimes the order of protection is used as a prior inconsistent statement, isn't it? Yes, Your Honor. Under 15010? I would say that yes, yes. So this is not unusual for them to put this on there? I don't believe that you... I'm sorry. No, go ahead. I don't believe that it's an unusual thing for the court to include as a prior inconsistent statement. I think in this case, with this set of facts, it would be unusual to allow an order of protection in this type of case, where we have a witness who's testifying that she remembers better today, that she was fuzzy because... It's important because we don't have a witness here who's saying, I don't remember something of a battered person. Well, she did say she didn't recall several times, didn't she? Absolutely, Your Honor. However, further on in the transcript, she states that she doesn't remember because she was drinking. And that's a bit different from saying, oh, I just don't remember because too much time has passed, or maybe she felt more confident telling the police this is what happened, and then now she's testifying at trial, and she's afraid for whatever reason. Certainly in those cases, an order of protection actually would probably help both sides, and definitely the fact finder and the determination of law, I think, in order of protection in those cases. And that's why I believe that the statute, if we look at the history of the statute, that's why it exists. In this case, Your Honor, we have a witness who told the police what happened on September 14th. She then, on September 15th, goes and takes out an order of protection at the officer's discretion. She does not author that order of protection. And that order of protection has allegations in it that she never told the police initially in her initial statement. So therefore, and then she testified consistently. So those are inconsistent statements, which would go to the weight of her credibility, correct? I mean, didn't the state lay the proper foundation? They could have done it better, but they laid the foundation that she made an inconsistent statement, the time, the place, the circumstances of the statement. So doesn't this all come down to the weight to be given to her credibility? Respectfully, Your Honor, I don't believe that the state laid the proper foundation to admit this order of protection as a prior inconsistent statement. And the reason for that, Your Honor, is because when they asked Ms. Dorsey, and I'm just looking for it here in the record, the state themselves testified. And each and every question that was asked by the state was objected to leading. On page 20 of the record, it was sustained. And then the state said, do you recall what the argument was about? The witness, I really don't. During the argument, what happens? I'm not sure. Did she recall what it was about when she gave the order of protection? So in the order of protection, Your Honor, she did not recall what the argument was about. She recalled that it occurred over – oh, I have it here. Your Honor, in the order of protection, she states that the parties began arguing. So she doesn't say what it's about, but she does say in the order of protection, Thomas threw water at Heidi and pushed her, brushing her arm and buttock. Thomas then punched Heidi in the face, breaking her glasses and bruising her face. He also then told Heidi he wanted to smash her head in. So that is so wildly different from what she initially told the police. So we're not talking a prior inconsistent statement with regard to – she's testifying at trial, and the prior inconsistent statement is this order of protection. When she initially told the police, she said that she had just a bruise on her lip or an abrasion on her lip. That's what the officer observed, and that's what the officer took pictures of. So we have this other statement. It's an ancillary statement. It's not a prior inconsistent statement. That's completely different from what she initially told the police and what she testified to at trial. And I think, Your Honor, the reason that the prior inconsistent statement statute is written the way that it is, why it only allows for statements that are either testified to under oath or one that someone has personal knowledge of or something that somebody signed, the reason those protections are in place in the statute is for purposes like this, where we have such a wildly different statement. And the strongest reason that this should not be admitted, Your Honor, is because we have the complaining witness, Ms. Dorsey, testifying that she did not write this. She did not go and get it. Can you direct us to any cases where the trial court denied the admission of an order of protection on an inconsistent statement? Your Honor, I would be happy to supplement the record with cases with regard to that. With this case, because it is such a unique situation where the order of protection was so wildly different from anything that was previously testified to, I don't believe, but we would be happy to supplement the record with regard to that. Additionally, Your Honor, in this case, and I think the stronger argument here is, even if Your Honors were to find that the order of protection was properly admitted as an inconsistent statement, we believe that the state still did not meet their burden, obviously, of proving Mr. Rezeki guilty beyond a reasonable doubt, looking to Ms. Dorsey's demeanor and behavior after this September incident occurred. And even with regard to this order of protection, that can be taken into consideration. So she testified that this order of protection was taken out the very next day. So by looking at what is contained there in this order of protection, we have somebody who looks, and this is not just speculation, it's clear from what's written in this order of protection, we have somebody who obviously is either upset or spiteful, not insulted and provoked. And we know that because we look at her, the way that she acted when the police arrived, and we look at the way that she acted after this incident allegedly occurred by, again, going to bed, not answering the door, those types of things. Yeah, and I don't disagree with you, but isn't that the purview of the trier of fact? The jury heard all of that. They saw all of that. That was their determination to give the weight that they feel was appropriate to those inconsistent statements and that inconsistent, as you submit, behavior. How do we reverse what the trier of fact did in this case? And what is your burden? Well, Your Honor, we believe that under the reasonableness standard, that any reasonable trier of fact could not have found Mr. Rezeki guilty. Even looking at the light most favorable to the state in this case, because the evidence was so slight in this case, the state had such slight evidence. And I think with the evidence of the order of protection, by including that, it's clear that the trier of fact relied heavily on these statements, which were not supported by any further evidence. There was absolutely no corroboration. And we ask, Your Honor, Your Honor's question was, how can this court reverse what the trier of fact found? And again, it's a reasonableness standard. So any reasonable trier of fact could not have found this. And, Your Honor, the fact that the state concedes in their response that Miss Dorsey's testimony was, and I'm looking for their briefs, I'd like to quote it directly, they concede that her testimony was essentially unbelievable. And she's the only person that was there on that date. She's the only person besides Mr. Rezeki himself that were allegedly that were there on that September 14th date, Your Honor. So if we have one witness who testified and her testimony cannot be believed by the state's own admission, then how could a reasonable trier of fact have found beyond a reasonable doubt that Mr. Rezeki committed these offenses? And especially in light of the fact, Your Honor, that Mr. Rezeki was found not guilty of committing bodily harm. Okay, well, let's talk about that. You're saying that those are inconsistent verdicts, correct? The second verdict form was insulting or provoking. That's a less, you need to prove less for insulting or provoking than you do for the bodily harm, correct? So how is that an inconsistent verdict? Your Honor, our position would be that the insulting and provoking, it doesn't have to be less necessarily, respectfully, as they're both class A misdemeanors. The elements are different, but it's not necessarily that less needs to be proven. It's just different elements. So in light of the insulting and provoking provision, the state must prove beyond a reasonable doubt that there was an unwanted touch that was insulting and provoking. And in order to determine the insulting and provoking, and that is one of our arguments in our brief that that statute in and of itself is unconstitutional, which we asked the court to review under the de novo standard. However, case law that's interpreted that statute has determined that you must look to the demeanor of the complaining witness or the victim after this insulting and provoking touch allegedly occurred. Would your argument be better, counsel, if he was found guilty of bodily harm and not guilty of insulting or provoking? Yes, Your Honor. Yes, I would be different because the way that the evidence came out at trial and the photographs that were introduced, which is our position, they were admitted in error. And we did at the trial court level. Although we admit we objected to the admission of the photographs at the trial court level, we believe that because they were admitted, although we believe they were admitted in error, those photographs demonstrated some sort of bruising or some sort of injuries. So if the jury found that Mr. Rizeki did not commit those injuries, he did not inflict bodily harm, the bodily harm that was allegedly depicted in these photographs that were admitted by the state at trial. The fact finder found that Mr. Rizeki did not commit this bodily harm. So how if if the jury found that Mr. Rizeki did not commit this bodily harm, despite the fact that they were shown evidence and pictures of bruises and injuries and they were given this order of protection, which indicates that and what's described in this order of protection is a vicious physical assault that he punched her in the face. He broke her glasses. He bruised her face and wanted to smash her head in. The jury found that that didn't occur because they found him not guilty of bodily harm. So certainly had they found him guilty of bodily harm and not guilty of insulting and provoking, we would be in a much different posture here because in that. Thank you very much. I get your argument. Thank you. I have no further questions. Justice Hutchinson. Justice Shostak, Miss Seaman, I have a few. I've been doing this appellate work and trial work for some time, and I have never heard of a phrase that you used about it was the officer's discretion to go for an order of protection. What does that mean? You and I apologize. I think it's the Zoom argument. Order officers direction is what I stated. So the officer and this is on page. Your page 20 of the trial transcript, I'm going to find the exact page. The officer directed the complaining witness in this case to obtain an order of protection. All right. But did that mean she had to do it? Your honor? No, I don't. I don't pretend to know the subjective reason why Miss Dorsey obtained this order of protection. I don't think but I also think that a lay person under the direction from an officer, certainly an authority figure may feel compelled to comply with that order or that direction. I do think that that is maybe not rising to the level of coercive, but it's certainly instructive for her to go and obtain this order of protection. And we have it. We have a situation here where this witness was almost held in contempt of court, was issued a petition for rule to show cause and almost brought before the court to show good causes to why she didn't show up or she would be arrested and thrown in jail. So certainly an officer telling her you should get an order of protection, I would say, at the very least, is instructive. My counsel, where did this incident occur? Where is this condominium located? Your honor, I believe it's located in if I may have just one moment. Carpentersville, your honor. That's kind of interesting because your brief on page four says that the Carpentersville police went to Crystal Lake to talk to the victim here. Is there a difference between Carpentersville and Crystal Lake? Your honor, I'm looking at our brief on page four, received a dispatch. I believe that Mr. Rezeki after the incident occurred, and this is also in the order of protection. It says when the not not knowing the police had been called, Thomas left the residence and Heidi went to his room. So Mr. Rezeki relocated to Crystal Lake in order to remove himself from the situation. And so that is an error in our brief on page four. The Carpentersville police responded. They responded to to Carpentersville and then later on went to Crystal Lake where they spoke to Mr. Rezeki, where he was cooperative and gave his version of the events as they occurred. So that would be an error in our brief. Do you know of any other errors in your brief that might be confused? Your honor, I don't I don't believe so. I'm certainly open to any any directions from the from the court and from the justices with regard to that. And I do apologize for that. I think that that would be a Scribner's error. I don't believe that it's a substantive error, and I don't believe that should undermine the credibility of any of the arguments contained there in the brief. Counsel, it's a careless error on your part or whoever wrote this brief. And I suggest not direct that you'd be more careful in the future. Now, during the course of the testimony of our witness here, didn't she say that she was freaked out? She was upset and there had been a huge fight that occurred. Didn't she put that in writing in that text or otherwise? I believe that Miss Dorsey testified to that when the state was asking her how she how she felt after after the incident occurred. And your honor, that that portion of testimony also gave me pause after reading the renter case to see how did she feel after this? How did she react after this? And I think that that statement could be taken in conjunction with her earlier testimony where she states that she came at Mr. was like you first and that she did not answer the door because she believed that. And this is on page 21 that she felt part of the situation, too.  I think that that is common for anybody that's involved in a mutual argument and particularly in the argument that involves not mutual combat, but but physical altercation where in that person is the aggressor. And the two police officers show up on my Carpentersville doorstep and want to talk to me. I think that I being freaked out is a natural reaction. I don't think it's a reaction that rises to the level of insulting and provoking. And certainly, you but counsel, you were not on the jury and it was the jury's province to take the instructions that they were given and apply the evidence that they had heard. And why is it not reasonable or not consistent with their verdict that they determined that freaked out upset and a huge fight as related to her daughter constituted insulting and provoke or provoking testimony. Your Honor, it's not reasonable because the because the the evidence the way that the evidence came out with her testifying that she went after him and that it was physical both ways. And she remembers herself going after him. It's not consistent with a finding that he committed an unwanted touch upon her that was insulting and provoking. And certainly I was not on the jury. And I think that we don't know what the jury found was insulting and provoking because quite frankly, the evidence was all over the place. The testimony was all over the place. There was this order of protection that was completely uncorroborated by any other evidence and and it's important in these type of cases to look at not just the complaining witnesses testimony, but the other testimony of other witnesses. And we had two officers that testified in this case, and none of their observations were consistent with what is contained in that order of protection. There's no observation of broken glasses or I mean wet hair wet clothes, none, none of that was told to these police officers. When they arrived, and it's her, excuse me was her statement to the police officers sworn and under oath. No, Your Honor. And I think, how are why are we even talking about that as part of a prior inconsistent statement. You yourself said that the statute requires a prior statement under oath. And the only one we have here, other than hers at trial is her testimony, or her, the information in that order of protection that she signed under oath. Yes, Your Honor. Absolutely. We would just ask the court to consider. Certainly cannot be considered her testimony to the police for purposes of prior inconsistent statement as it does not rise to the level of what is needed in order for it to be properly admitted as a prior inconsistent statement, but just for the courts to consider whether or not the order of protection was actually inconsistent with what she testified to a trial and certainly this order of protection, I believe that the admission of a verified order of protection, typically can be allowed. In this case, Your Honor, because the witness testified that she herself did not write it, and she herself did not wish to take it out. I think that is important for the court to consider. Yes, it is signed by her, but certainly, Your Honor, it was admitted in error, based upon the previous was the police officer that directed her to file this standing over her at the time she signed the order of protection. I don't know I doubt that that question was not. So Miss Dorsey, I don't believe so. But I guess you said that the witness was cooperating she was, you know, she was maybe fuzzy but she was cooperating. Did she show up at the original trial date. And if she did not, is that the reason it had to be continued. Your Honor, she did not show up at the original trial date. That was the reason for the court allowing the continuance one of the issues that we raised in our brief that we believe when we asked the court to review this under an abusive discretion standard, is that the trial court improperly granted a continuance for the state on the day of trial, and I know case on its progeny have allowed continuances where witnesses unavailable on the day of trial. But we asked the court to consider the fact that other there were other witnesses that were available on the day of trial, the officers were there. And while the state made an oral motion for continuance. This motion was not in writing supported by affidavit as required by the statutory rules and regulations. And we believe that the state should not have been allowed a continuance on the day of trial, or Miss Dorsey failed to appear because she was properly served by the state's own admission in their argument for a new trial. That doesn't mean she showed up did it know your honor shoot she was not so how are they to know she wasn't going to show up. We would, there was a pre trial in this case your honor and the way that King County does jury trials as they have a pre trial so that issues can be there. Was she at the pre. No, she wasn't. So how are they to know on the day of trial she was not going to show up. No, a phone call a phone call or any type of contact with a complaining when it's particularly when we have a pre trial, where the state answers ready and says that they're going to be ready. They should have had contact. They have properly served her with a summons. I thank you counsel I have no other questions. You will have an opportunity to respond if you so choose, and now we will move on to Mr Trejo for any argument he may wish to offer. May I please the court, counsel Adams that are home behalf of the people of the state of Illinois defendant alleges multiple issues on a very, on a very limited record. I will try to address them in my, in my time that I have very briefly. I take issue with the fact that opposing counsel indicates that I stated that the complaining complaining witnesses testimony was unbelievable. That's a misstatement of the brief, and it's a, it's a theme that happens within the overall brief and the argument. Basically overstating or misconstruing facts in the state's brief, I did state that the state introduced a prior inconsistent statement, yes, I, I can see that that was properly admitted pursuing the statute but in no way did I state that that made her testimony, unbelievable. I believe that the argument attacking the petition for order of protection is the most disingenuous out of all the arguments made by the defendants, the defendants arguments. She analyzes them under a de novo standard of review. That is not the standard of review, it's an abuse of discretion. Did the trial court abuse its discretion in admitting this piece of evidence. And I acknowledge that defendants incorporated this issue in her post trial motion. However, we don't know what arguments were admitted to before the trial court we don't know the comments made by the trial court. When it decided that the petition was properly admitted. Hence, the lens is not a de novo review, it's we're looking at the trial courts decision, and we can't do that, based on the lack of the record. Nevertheless, defendant does argue plain error. But I'd like to stress the point that the state and defense counsel agreed to the redacted version. And the trial court specifically asked defense counsel, do you object to its admission, and defense counsel stated no, we do not know the state proceeded and proceeded to lay its foundation. Now, and defendants first brief. He argues that the complainant witness stated the petition of order into evidence. Yet, at our argument, she's stating that she didn't that the complainant witness didn't state what was in the petition. Those are two contradictory arguments. What was it she didn't provide information what was in the petition, or she read it at trial. Nevertheless, I do believe that it was properly admitted. And I would like to go on and address the other arguments mentioned with mentioned during her arguments in regards to the motion for the continuance, which is granted defendant argues that it was an abuse of discretion. She states that the state didn't file a written motion beforehand, but the state didn't know the witness was not going to show up. They had, they did it, the state did its due diligence in issuing a subpoena in December of 2017, and the original scheduled trial date was in March, she didn't appear during a pre trial date. And furthermore, the people sites people V Moriarty, which stands for the proposition that an informal initial request is of no consequence, when a witness fails to appear. Furthermore, the state memorialized its motion afterwards, and, and also attached an affidavit. In regards to defendants arguments that the trial court aired and excluding defendant statement found within within a police report. According to that, according to defendants brief, the statement revealed that defendant said that the victim pushed, pushed, pushed him, and that he pushed the victim after she kicked punched and grabbed his throat. This statement cannot be found anywhere within the record, and it's not included within defendants first motion and eliminate. There are also no transcripts from that hearing. Nevertheless, there is a reference to this request in the post trial motion filed, but again, we don't know why the trial court denied the request. Nevertheless, and defendants brief. He argues that it should have been admitted under rule 805 b three. Under that rule, a defendant of the declarant statement must be against his penal interest. And when you analyze the alleged statement within the defendants brief. It's not against his penal interest, it supports his theory of self defense. Furthermore, police reports are generally not admissible and evidence. In regards to defendants argument that the trial court aired and denied his first motion and eliminate, which sought to admit allegedly testimony from police officers regarding evidence that the police were called to the to the defendants and victims home. I really want to point this out. We must look at the defendants pleading in that pleading defense counsel sought to introduce prior bad acts for impeachment purposes, not as substantive evidence. When you look at that motion statute five slash 115 that 7.4 is not. It's not cited within that motion. And according to the state's post trial motion. It was denied because defendant did not have the proper evidence to perfect the impeachment. Thus, defendant never argued in his first motion eliminate that prior bad act should have been admitted as substantive evidence, only for impeachment purposes. Later on, on the day of trial defense counsel filed a second motion and eliminate. They argue that any statements about prior domestic incidents is hearsay, and should be excluded as such. Now, rulings on on evidence are always subject to reconsideration by the trial court. Later on, they follow the post trial motion, arguing that the trial court abuse its discretion and denying prior bad acts. Yet, on the day of trial, they argued that it should be excluded. Because it's hearsay. It's very hard to attack a trial court's decision. When you're arguing the opposite already. In regards to defendants argument that the state committed prosecutorial misconduct during the read direct examination of officer lit key defendants statement of facts are are incorrect. During cross examination of the officer. The officer testified that when he spoke to the victim. She referred to past incidents with different things. Now, since the defendant opened the door to prior instances of prior bad acts. The state requested that it be allowed to ask clarifying questions. According to the state, the victim was alluding to a past incident regarding her finger. Now the trial court allowed the state to question the witness, but prohibited the state from asking who caused the injury to the victim's finger. During questioning the state asked who hit your eye. The state never asked who caused an injury to your finger. They asked, they asked a relevant question regarding an injury, which was alleged to have occurred on the night of the charge defense. And in support of that, I'd like to direct this court of the officer's testimony, and what she stated that he that he commented on her I took photo. And, and took photos of her of her face. Hence, the trial, hence the state did not commit any error in that regard. The state would also like to address the defendant's argument that the trial court and properly admitted photographs, taken by the victim of her injuries. I'd also, I'd like to point out that defendant is not contesting the admission of a photograph taken by Officer Lipke. The state introduced state's exhibit six, and that exhibit Officer Lipke took a photograph of the victim's face. Yet, defendant is not contesting that admission, only admissions, only photographs taken by the victim herself. Thus, if this court does find error with the state does not believe an error occurred. It's harmless, because there was already a photograph admitted taken by different individual. In this case, the officer. But defendant does not contest the relevancy of the photos taken by the victim, only its authentication to authenticate a photo, a witness can have knowledge of what the matter can have knowledge of what the matter the photo claims to be. And the proponent of the evidence only needs to prove a rational, a rational basis, upon which the fact finder can conclude on which it's authenticated. Now at trial, the victim said she took the photos within a couple of days after the incident with defendant, and she said that the photos fairly and accurately depicted the photographs, they were on her body. And some defendants argument goes to the weight of the evidence, and not the admissibility defendant also claims that the photographs didn't contain a time notation. Yet, he doesn't contest photographs taken of the defendant, which also does not contain a time notation. But you don't need a time notation for that there's no requirement that this notation be placed on the photograph. In regards to defendants argument that the evidence was insufficient to prove to prove that he knowingly made physical contact of an insulting or provoking nature. When he struck the victim on or about the head or body. He argues that the victims versions of events were inconsistent vague impeach and insufficiently credible. The jury was presented with this testimony from Dorsey, the traffic was able to observe her testimony and judge it against the other evidence admitted at trial. Defendant is essentially asking this court to substitute his his own judgment for that of the trial fact, which again goes established President precedent was a reviewing court will not retry the evidence. And the evidence, Mr. Excuse me, you need to wrap up your time has expired. Oh, I apologize. Based on the arguments presented here and and in the state's opening state's opening brief, the people of the state of Illinois respectfully requested this on a report affirmed defendants conviction and uphold the constitutionality of the domestic battery statute. Thank you, counsel. All right, Justice Jorgensen Do you have any questions. I just have one question, what was the basis for the motion to continue the first trial date. Yes, the the complaining witness unexpectedly showed up. That was the reason she didn't show up. That's it. Yep. Quite simple. We subpoenaed her, there was no indication that the witness showed up. And that's why the state asked to continue the the trial, and again that's within the abuse of discretion of the truck. That was my only question. Thank you. Yep. Thank you, Justice Jorgensen Justice Shasta. Can you hear me. Thank you. Oh, good. One of the other issues that they raised and I didn't ask counsel because she indicated that wasn't one of her arguments is that they indicated that there was error. Because you filed a a motion to change the, the charging document. Why was, yes, why was, was the fact that you at basically she says the last minute, try to change the charging document, and where the elements of the offense changed at all. Yes, well, well the state does did provide a reason why she chose to amend it. The police, a police officer actually drafted, the, the first complaint. And so when it came to the ASA hand. She discovered that it should have been amended. And when she, the state filed its motion to amend complaints. The Senate argues that it was a substantive change. However, it's the state's contention that it's a formal amendment. And both. There any in you need to show, they need to show surprise or prejudice, was there any surprise or prejudice, and if not, why not. Absolutely not. The motion was filed on December 7 2017, three months before the original trial date, and five months before the actual trial date. At no point within those three months, did they file a motion to continue. Okay, thank you. Thank you, Justice Shastak, Mr. You started your argument with the fact that we did not have a record of that proceeding on the motion. The post trial motion council said that she are a supplement to the record had been filed. Did you ever receive a supplement to the record. There is a supplement to the record but not the one not a relevant one that I mean there is a supplement, but I got when I briefed the case. I have not received notice of a supplement. I've not received notice of emotion to supplement the record, nor I have not received an order of the court granting emotion to supplement. And so, when we say you have not received a motion to on supplementing this record that goes to the issue of the post trial motion that's been discussed here. Now, I don't know if it's related to the post trial motion, but based on defendant statement. She made it seem that it was a supplement emotion to supplement the record, I believe, with the post trial motion, but I'm not sure since I never received such emotion. Okay. All right. Thank you very much. Miss Seaman, you may reply if you wish, but we are running late so I may have to interrupt you. If we go past your time, you may proceed. Thank you, Your Honor, Your Honor. First I want to address the issue with regard to the supplementing of the record. I don't want to misstate the procedural history of the case, the record was supplemented on an agreed motion between myself and the state if there is additional things that are missing from the record. Then, I apologize and I don't mean to indicate that those have been supplements that I trust Mr Trejo's representation. With regard to the issue of the substantive versus formal amendment of the complaint. Your Honor, the, this was clearly a substantive amendment and counsel's argument that as soon as the state received the police officers complaint in his in her hand, that's when she realized that's simply not the case the case was pending for a year, and the case had already been set for trial by the state's own concession prior to the time that the complaint was amended. It's certainly a substantive amendment. Initially, the complaint indicated that there was a punch with a closed fist. That's very specific about what occurred and then it was amended to include just vague general bodily harm, Your Honor. And so the appellant's position is that that was amended in order to make the allegations broader in order for it to make the state, the state's case easier to prove. And certainly in this case, Your Honor, the charging document becomes immensely important because the jury found what we believe are inconsistent verdicts. And if there was a punch with a closed fist that's much different from the water allegation that's contained in the, we believe is the improperly admitted order of protection, Your Honor, and you're on our, we're reviewing here people versus Lofton it's a second district appellate court case with regard to prior inconsistent statements. I have been searching for a case wherein an order of protection was considered improperly admitted I don't believe that there is a case on point with the allegations contained in this matter, Your Honor, the court did ask Mr Trejo about the motion for continuance that we believe was improperly granted we believe it was an abuse of the court's discretion to grant that in that case, Your Honor, the witness told the state that she did not want to proceed that was brought to the state's attention. But the state still answered ready on that Thursday before the jury trial, so that they were going to be ready for trial that she was properly served. And so then they, they made an oral motion for continuance, which was granted, and then issued a petition for rule to show cause against this complaining witness who indicated that she did not wish to proceed. It's our position she did not wish to proceed because she knew that her testimony was false, that it was fabricated that what she testified to a trial was was slight evidence was evidence that she was the initial aggressor. And that's important, Your Honor, we believe that we also established a prima facie case at the trial level, that there was some indicia of self defense and we raised the issue in our brief that once that evidence of self defense was established that the state failed to rebut that affirmative defense of self defense beyond a reasonable doubt, which is required by statute and we don't believe that the state did that. The state presented the testimony of two witnesses in their case in chief, one of which was actually there for what occurred on the September 14 date, and her own evidence. She testified that she was the initial aggressor that she came at him first that she believed it was mutual and she did not want to pursue this because she believed that she had some partner as well, Your Honor, and the state in their, in their response to our brief, Your Honor, indicate that Indicate that Miss Dorsey's injuries here. They stated that the evidence presented regarding the the injuries on Mr. Dorsey were They indicated that there was a slew of injuries on Dorsey. They indicate that the evidence, the injuries that were on Mr. Dorsey were not as pronounced as the injuries on Miss Dorsey and Your Honor, this is this is all speculation and certainly the jury was allowed to see photographs, but the jury was not allowed to consider the statements of Mr. Immediately thereafter, what occurred on September 14, the trial court and we believe again abused its discretion and not allowing this evidence in this statement in this testimony and because certainly this statement would have bolsters not only Mr. self-defense, but Miss Dorsey's testimony that anything that any injury that she received was after she had already become the initial aggressor. So again, corroboration, corroborating her version of self-defense and Your Honor, the state's reliance on people v. Guja, G-U-J-A, is is unfounded in this case, Your Honor, because there was no evidence that that here Mr. Rizeki responded to a confrontation with such excessive force that he was no longer acting in self-defense. In fact, it's quite the contrary. The injuries to Mr. Rizeki, which included scratches, red marks, and bruising were pretty consistent with any injuries that were that were shown to be on Miss Dorsey. But Your Honor, those injuries, again, we believe were improperly admitted those photographs, but more tellingly, the jury found that Mr. Rizeki did not commit those injuries on Miss Dorsey. He did. He was found not guilty of bodily harm with regard to those injuries. And we think that that's very important for the for the court to consider in this case. And Your Honor, certainly the same and excuse me. In fact, your time is up. Would you like to sum up your position? Your Honor. And for those reasons, we believe that even in viewing the the evidence in a reasonableness standard, no reasonable trier effect with this this many inconsistencies with this evidence that was improperly admitted could not have given weight enough to the evidence to find Mr. Rizeki guilty and ask that you reverse the finding of the jury. Find him not guilty. Thank you, Miss Seaman. Justice Jorgensen, do you have any questions? I have no further questions. Thank you. Justice Shostak, do you have any questions? None for me. Thank you. I just have one. In the time after the complaint was filed, and after the motion to amend was filed, but before the motion to amend was acted upon by the trial court. Did you or anyone representing the defendant here file a motion for a bill of particulars. No, Your Honor. However, on the date that the amendment was ruled upon that March date, which would have been several days or the day of trial. Counsel for Mr. Rizeki did argue that this amendment made the charging document vague, unspecific and did essentially make that motion for a bill of particulars orally when arguing against the amendment. Hi, but you agree that there was time that you could have done that before that motion was ruled upon. Your Honor, we would agree that that could have been done by the defense. I think that the defense's position was that because at all relevant times here too, the complaining witness had indicated to the state that she did not wish to proceed, that this was going to be a matter that was not going to move forward to trial. And specifically, on the date that the state was granted a continuance, when Ms. Dorsey was served, when she communicated to the state, she did not wish to proceed. And when she failed to avail herself to the court, it was the defense's position that the state would not be moving forward with trial in this case, based upon the lack of evidence, the strength of the evidence in their case, and that the case would not have proceeded to trial. Thank you very much. Counsel, thank you very much for your arguments. The case will be taken under advisement. We will issue a written decision in due course, and we will stand in brief recess now to get our next panel online. Thank you all. Thank you, Your Honor. Thank you.